Moss *v.* Moose.

Opinion delivered November 9, 1931.

*Buzbee, Pugh & Harrison,* for appellant.

*W. P. Strait,* for appellee.

MEHAFFY, J.   Mabel Kissire, 12 years of age, was struck by an automobile driven by Eugene Coxsey on December 3, 1928, in Morrilton, Arkansas.   On December 14, Mrs. N. A. Kissire, mother of the child, was appointed guardian and curator of the person and estate of Mabel Kissire.   On the same day a petition was filed by the guardian in the probate court for authority to settle the claim of the minor for the injuries received as a result of being struck by the automobile.

The court, without hearing any evidence, but taking the statements of the attorney for the insurance company and the guardian, made an order authorizing

the guardian to settle the claim for damages for the sum of $200.

The claim was thereupon settled by the guardian, and she executed a release as guardian and in her own right as mother. Mabel Kissire, a minor, was at the time when the petition was filed and the order made, in the hospital, seriously injured.

The petition of the guardian for authority to settle the claim and the order of the court were prepared in Little Rock by attorneys for the insurance company. The father and mother of Mabel Kissire were not living together at the time, were divorced, and the mother had custody of the child. The father objected to the settlement and refused to approve it.

The attorney for the insurance company and Mrs. Kissire went to W. P. Strait's office, an attorney at Morrilton, and he advised against the settlement at that time. Notwithstanding the advice of Mr. Strait and the objection of the father, the guardian and Mr. Wright, attorney for the insurance company, went to the probate court and represented to the court that the girl was not injured much and would soon be well. Mr. Wright presented the matter of settlement to the probate judge.

No proof was taken and the probate judge knew nothing of the child's condition, and it was represented to him by the insurance company's attorney that the injuries were not serious. The probate judge said he did not think he read the petition, and made the order without hearing any evidence, but relying on the statement of the attorney that the child's injuries were not serious.

After this Eugene Coxsey died, and A. J. Moss was appointed administrator of his estate.

J. S. Moose was appointed curator of the estate of Mabel Kissire, and on November 2, 1929, filed a petition in the probate court asking that the order of settlement previously entered be set aside. The petition alleged that Mabel Kissire was seriously and permanently injured on December 3, 1928, by the negligence of Eugene Coxsey in running his automobile upon, over and against her, and

that, as a result of this, she, for a long period of time, experienced intense physical pain and mental anguish; that one of her limbs were severely crushed and broken, that she was otherwise injured and wounded, and that she is permanently crippled; that said Coxsey carried casualty insurance in the sum of $5,000.

The petition alleged that 11 days after her injuries, when she was still in the hospital and when large expenses were being incurred, agents and representatives of the insurance company, with said Eugene Coxsey, procured the appointment of Mrs. N. A. Kissire, mother of said child, as guardian, and that on said date, by fraud and intimidation and without the knowledge of Mrs. Kissire as to the nature of said transactions, they procured her signature to the petition to the probate court of Conway County asking for authority to settle all the rights of said minor for her injuries and damages for the sum of $200, representing to the court that her injuries were of minor importance and not serious, and thereby procuring an order authorizing said settlement.

It was alleged that the representations were false and constituted a fraud upon the court, and that Mrs. N. A. Kissire, in fact, made no such petition to the court. The petition prayed that the cause be reopened, and said order set aside and annulled.

The court took testimony and made an order stating in said order that it appeared that Coxsey carried casualty insurance in the sum of $5,000, and that the agent of said insurance company and Eugene S. Coxsey, by deceit and misrepresentations perpetrated on Mrs. Kissire, guardian, procured her signature to the petition, and that the insurance company and Coxsey procured the appointment of Mrs. Kissire as guardian, and it further appeared by the testimony of J. H. Reynolds, judge of the probate court at the time the original order was made, that a fraud was perpetrated upon him and the facts misrepresented, and that no proof was taken, and that it was further shown by proof that the child was seriously injured and permanently crippled, and that

Mrs. Kissire understood that she was simply settling expenses.

The court found in favor of the petitioner, set aside the order of the court authorizing settlement for $200, and from said judgment of the probate court the administrator of the estate of Coxsey appealed to the circuit court. The case was tried in the circuit court by the court sitting as a jury, and judgment was entered sustaining the order of the probate court in setting aside the order for settlement. The case is here on appeal.

Much evidence was taken on the question of whether the order of the probate court authorizing a settlement of the damages for $200 was a fraud practiced on the court by the successful party. We deem it unnecessary to set out the testimony, for the reason that the probate court had no jurisdiction to settle the matter, and its judgment was therefore void, whether any fraud was practiced or not.

Probate courts have no common-law jurisdiction. The nature, extent, and exercise of the jurisdiction of probate courts depend on the terms of the constitutional and statutory provision, and they cannot exercise any powers other than those which have been expressly conferred upon them, or which are necessarily implied from those conferred.

The constitution provides: "The judge of the county court shall be the judge of the court of probate, and have such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians and persons of unsound mind and their estates as is now vested in the circuit court, or may be hereafter prescribed by law. The regular terms of the court of probate shall be held at the times that may hereafter be prescribed by law."

Section 34, article 7 of the Constitution.

The statute provides: "The court of probate shall have original jurisdiction in the following cases:

" 'First. In all matters relating to the probate of wills and testaments, the estate of deceased persons,

executors, administrators, guardians, and persons of unsound mind and their estates.

" 'Second. In the settlement and allowance of accounts of executors, administrators and guardians.

" 'Third. To hear and determine all controversies respecting last wills and testaments, rights of executorship, administration or guardianship.

" 'Fourth. To issue process and to cause to come before such court all persons whom they may deem it necessary to examine, whether parties, or witnesses, or who as executors, administrators, or guardians, or otherwise shall be interested or in any wise accountable for any lands, tenements, goods, chattels, moneys or effects belonging to any minor, orphan, or person of unsound mind, or to the estate of any deceased person'." Section 2256, Crawford & Moses' Digest.

In speaking of the powers granted probate courts, this court said: "The most important interests, the guardianship of widows, children and estates, are committed to their superintending care. Some possibly are dishonest, many are not wise or discriminating. Taking into account the magnitude of the property interests which they have in charge, these courts should be required to proceed in exact conformity to law, instead of being panoplied by the presumptions which attend the exercise of superior jurisdictions by other courts." *Apel* v. *Kelsey,* 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183.

It has been repeatedly held that it was not the purpose of the constitutional and statutory provisions to invest the probate court with jurisdiction of contested rights and matters of litigation as to the title of property between the executor or administrator and others. *Fancher* v. *Kenner,* 110 Ark. 117, 161 S. W. 166; *Moss* v. *Sandefur,* 15 Ark. 381; *Hart* v. *Wimberly,* 173 Ark. 1083, 296 S. W. 39.

"It is well to remember that these tribunals have only such specific and limited jurisdiction as is conferred upon them by the Constitution and statutes, and can only exercise the powers expressly granted and such as are

necessarily incident thereto." *Lewis* v. *Rutherford,* 71 Ark. 218, 72 S. W. 373; *Union & Mercantile Trust Co.* v. *Hudson,* 147 Ark. 7, 227 S. W. 1; *Paget* v. *Brogan,* 67 Ark. 522, 55 S. W. 938; *Shane* v. *Dickson,* 111 Ark. 353, 163 S. W. 1140.

The original judgment of the probate court was void because the court had no jurisdiction, and it is unnecessary to determine whether fraud was practiced on the court in procuring the judgment.

The judgment of the circuit court is affirmed.

HART, C. J., (on rehearing). Counsel for appellant have filed a very earnest and exhaustive brief on rehearing; and, in the opinion of the majority of the court, they have to some extent misconceived the issues raised by the appeal in this case, and the effect of the opinion of the court. For this reason, we have deemed it best to write an additional opinion.

The record shows that a guardian was appointed for a minor who had been injured in an automobile accident. The guardian filed a petition in the probate court, stating that he had been offered $200 in settlement of said injury, which he considered reasonable. He asked the court to grant him authority to settle for that amount and to execute a full release. The court granted the prayer, and the release was duly executed under it. It is the effect of this order which is raised by the appeal in this case. The order was not set aside at a term at which it was rendered.

It was insisted by counsel for appellant, both in their original brief and in their reply brief, that the order of the probate court could not be set aside at a subsequent term except for fraud in its procurement. Thus, it will be seen that counsel for appellant claim for it all the binding effect as *res judicata* which attaches to other judgments of courts of record. This would, under the order of the probate court, make the order conclusive except for fraud in procuring it upon the settlement of the accounts of the guardian. The practical effect of

such a holding would be to give probate courts jurisdiction of suits for unliquidated damages.

At the outset, it may be said that a guardian, unless restricted by statute, is authorized by virtue of his office to compromise claims for or against his ward. He stands in the same position as any other trustee who may compound a claim for or against his *cestui que trust,* who acts in good faith and with a sound discretion.

Under our Constitution, the judge of the probate court has such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind and their estates, as may be hereafter prescribed by law. Article 7, § 34, of the Constitution of 1874. In order to carry into effect this provision of the Constitution, probate courts are vested by statute with jurisdiction of accountings and settlements by guardians. Section 5064 of Crawford & Moses' Digest provides that guardians shall make annual settlements of their accounts with the court of probate in which their proceedings shall be, and that guardians neglecting or refusing to make such settlements shall be liable to be attached and imprisoned until they do so. If, by previous orders, the probate court could settle the items of the account, great confusion would result, and the door would be open for fraud to be practiced upon a class of persons, who, by reason of immaturity, it is the design of our Constitution and statutes to protect; for, as claimed by counsel for appellant, if the previous order had the binding force and effect of a judgment of a court of record, it could only be set aside at a subsequent term of the court for fraud in its procurement.

In recognition of this principle, in *Burke* v. *Coolidge,* 35 Ark. 180, it was held that, if an executor claim credit in his settlement with the probate court for an illegal expenditure, the court should reject it, although it may have previously approved the expenditure and authorized the executor to take credit for it.

As pointed out in *Sumrall* v. *Sumrall,* 24 Miss. 258, without such a construction of the statute, the grossest wrongs and injuries might be perpetrated by executors, administrators, and guardians under its provisions. Continuing, the court said: "Nothing, in fact, would be easier for them than the establishment of unjust claims to any extent upon *ex parte* applications to the probate court, and the rights of creditors and distributees be thus seriously compromised, and they left without redress, unless the privilege of contesting the claim is accorded to them when the account of the administrator is presented for allowance and settlement after notice to them, according to law."

The doctrine of *Burke* v. *Coolidge, supra,* was reaffirmed in the subsequent case of *Boyd* v. *Duncan,* 178 Ark. 772, 12 S. W. (2d) 395; and *Souter* v. *Fly,* 182 Ark. 791, 33 S. W. (2d) 408.

Counsel for appellant, however, earnestly insist that such holding is opposed to certain cases of this court cited by them in their brief on rehearing, but, after a careful consideration of the matter, a majority of the court has concluded that the principles herein announced are in harmony with these cases.

In *Waldrip* v. *Tulley,* 48 Ark. 297, 3 S. W. 192, it was held that a guardian is the authorized agent appointed by law to take care of the ward's estate and manage his affairs. The guardian, acting in entire good faith, spent a sum of money in repairing a gin upon the land of his ward; and in his account current the guardian asked credit for the sum so expended. The mother of the infant as next friend filed exceptions. Upon appeal to the Supreme Court, the judgment of the circuit court was reversed, and the cause was remanded with directions to overrule the exceptions to the guardian's account.

In *Wilks* v. *Slaughter,* 49 Ark. 235, 4 S. W. 766, the court held that at common law the administrator had authority to compromise a claim or compound a debt of his intestate.

Again, in *Nashville Lumber Company* v. *Barefield,* 93 Ark. 353, 124 S. W. 758, 20 Ann. Cas. 968, it was held that both at common law and under the statute, a guardian is authorized to compromise a claim for personal property, provided the compromise was made in good faith and not in fraud of the minor's rights. That was an action in replevin to recover possession of a lot of logs and lumber or their value by the next friend of a minor. The suit was defended on the ground that there had been compromise of the matter with the statutory guardian of the minor. The court refused to permit the introduction of testimony to this effect; and, under the instructions given, the jury returned a verdict in the circuit court in favor of the minor for his proportionate part of the lumber and logs. The judgment was reversed because the court refused to permit the introduction of the testimony of the guardian showing the alleged compromise. In that case, the court said that a guardian may compromise a claim of his ward, when acting in good faith and in sound discretion. The reason is that the guardian stands in the same position as any other trustee who may in good faith compound a claim for or against his *cestui que* trust. The court approved the rule, however, that, if the compromise or release was made without sufficient justification or fraudulently or upon a grossly inadequate consideration, the guardian will be answerable for it in his account. The court further said such compromise can be impeached upon the trial of the action in which it is presented as a defense by showing that it was not made in good faith, but in fraud of his rights.

Thus, it will be seen that this case recognizes that no previous order of the probate court can be made which will prevent the guardian from being answerable upon the settlement in his account unless acting in good faith and with sound discretion. If the judgment of the probate court ordering the settlement in advance was a valid and binding judgment, the guardian could not be held accountable for it in his settlement unless, as we have

already seen, the order authorizing the settlement was obtained by fraud.

In the case of *Treadway* v. *St. Louis, Iron Mountain & Southern Railway Company,* 127 Ark. 211, 191 S. W. 930, it was held that an administrator may compromise and accept a settlement of an unliquidated claim for damages without special authority from the probate court. It was further held that, where the personal representative acts in good faith, those who would impeach his conduct must show fraud or mistake or such gross negligence as would amount to fraud. This showing would have to be made in the court where the compromise judgment was rendered in an action to set it aside.

Finally, it is insisted that the holding of the court in the present case is in direct conflict with that in *Pace* v. *Richardson,* 133 Ark. 422, 202 S. W. 852. We do not think so. In that case, the controversy arose between certain heirs and devisees among whom was an infant represented by her husband as guardian. A large estate was involved, and the will of the deceased was being contested. Under our Constitution and statutes, jurisdiction over the probate and contest of wills is vested in the probate court. Hence the suit originated there. Protracted and costly litigation confronted the interested parties, and a compromise agreement was adopted as the best mode of securing the estate to those entitled to it. The probate court, having jurisdiction of the main suit, had jurisdiction to render judgment upon the issues involved upon competent proof. This power to render final judgment upon the merits included the power to render judgment upon a compromise agreement. Upon the proof offered, the compromise agreement was upheld because there was no showing of bad faith in the matter.

If the case had originated in the chancery court in a proper case upon the construction of the will, as it sometimes does, that court, as an incident to its jurisdiction in the main case, would have had the right to ren-

der judgment upon a compromise agreement entered into in good faith.

To sum up, in the present case, if the guardian had brought suit for damages in behalf of the minor in the circuit court, that court having jurisdiction of the subject-matter, would have had the power to render judgment upon a compromise agreement. Hence, its judgment would have been binding upon the probate court in like manner as other judgments upon the settlement of the account of the guardian. The order of the probate court in advance of the settlement of the guardian's account gave him no additional authority in the matter, and did not constitute *res judicata*. The reason being that the probate court, having no jurisdiction of the subject-matter of the action, could not render upon the *ex parte* application of the guardian a judgment which would be *res judicata* of the issue. The probate court upon the settlement of the account of the guardian could inquire into his good or bad faith in the premises.

The result of our views is that the judgment on the former opinion was correct, and the motion for rehearing will be overruled.